UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY J. HAGAN,                                    Case No. 16-14022

      Plaintiff                              John Corbett O'Meara
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL                             Stephanie Dawkins Davis
SECURITY,                                          United State Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 15)**

## I.     PROCEDURAL HISTORY

### A.     Proceedings in this Court

On November 14, 2016, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  This

case was referred to the undersigned magistrate for all pre-trial purposes.  (Dkt. 3).

This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14,

15).  Plaintiff also filed a reply in support of her motion for summary judgment.

(Dkt. 17).

### B.     Administrative Proceedings

Plaintiff filed the instant claims for a period of disability and disability

insurance benefits on October 30, 2013, alleging disability beginning September 9,

2013.  (Tr. 19).[1]  At the hearing, plaintiff amended the alleged onset date to March 19, 2014.  (Tr. 39-40).  The claim was initially disapproved by the Commissioner on April 11, 2014.  (Tr. 19).  Plaintiff requested a hearing, and on November 19, 2015, she appeared and testified, with the assistance of her attorney, before Administrative Law Judge (ALJ) Manh H. Nguyen, who considered the case *de novo*.  (Tr. 34-56).  In a decision dated January 13, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 16-29).  Plaintiff requested a review of this decision.  (Tr. 15).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 26, 2016.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

---

[1] The Transcript of Social Security Proceedings is cited to throughout this Report and Recommendation as "Tr.," and found at Docket Entry 11.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was born in 1965 and was 50 years old at the time of the hearing. (Tr. 58). Plaintiff had past relevant work as a short order cook and a cashier. (Tr. 28). Plaintiff stopped working completely, after reducing her hours, in June 2014 because of the pain and her physician's orders. (Tr. 41). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. (Tr. 21). At step two, the ALJ found that plaintiff's multiple joint arthritis, degenerative disc disease of the thoracic and lumbar spine, disc bulging and stenosis of the cervical spine, myalgia, chronic pain syndrome, headaches, and obesity were severe impairments. *Id*. At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. 23-24). The ALJ determined that plaintiff had the following residual functional capacity (RFC):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; she can stand and/or walk for 6 hours in an 8 hour workday; she can sit for 6 hours in an 8 hour workday; she cannot climb ladders, ropes, or scaffolds; she cannot kneel or crawl; she can occasionally climb stairs and ramps; she can occasionally balance, stoop, and crouch; she can

> occasionally reach overhead with either arm; she can
> frequently reach forward, handle, and finger with either
> hand; for every one hour of sitting, standing, or walking,
> she must be able to change position for 3 minutes before
> resuming the prior position; she cannot be in an
> occupation that requires the use of a computer; and she
> cannot work around unprotected heights.

(Tr. 24). At step four, the ALJ concluded that plaintiff could perform her past relevant work as a short order cook, but not as a cashier, based on the vocational expert testimony. (Tr. 28-29). Thus, the ALJ concluded that plaintiff has not been under a disability from March 19, 2014 through the date of the decision. (Tr. 29).

     B.    <u>Plaintiff's Claims of Error</u>

To reach the finding that plaintiff could perform light work, plaintiff maintains that the ALJ improperly disregarded the medical opinions and restrictions of her treating physician, Dr. Viguilla. Dr. Viguilla opined that plaintiff is limited to lifting less than 10 pounds occasionally; standing and walking is limited to less than 2 of 8 hours; sitting is limited to less than 6 of 8 hours and her ability to sustain concentration would be impaired by pain. (Tr. 376-77). Accordingly, Dr. Viguilla opined that plaintiff could not perform even sedentary level work without the need to lie down or take unscheduled rest breaks multiple times during the day, and as a result of her pain, she would likely miss more than 15 days of work per month. (Tr. 387).

4

Plaintiff asserts that the ALJ provides insufficient analysis as to why he gave the treating physician's opinion little weight. (Tr. 27-28). The ALJ concluded that there is "no evidence that the claimant was unable to stand or walk." (Tr. 28). Yet, neither Dr. Viguilla nor plaintiff has stated that she is unable to walk or stand. Consistent with plaintiff's testimony, however, on multiple occasions, her physicians have opined that her back pain was aggravated or worsened by standing and walking. (Tr. 386, 316, 320, 324, 327, 330, 334, 338, 341, 345, 348, 359, 362). Plaintiff maintains that this is entirely consistent with Dr. Viguilla's opinion that plaintiff was limited to being on her feet standing and walking less than 2 hours of an 8 hour day. (Tr. 27, 376).

According to plaintiff, the he ALJ's only reference to the medical records to support his analysis was an August 20, 2014 report of pain specialist, Dr. Marvin Bleiberg, M.D. who noted only slightly diminished muscle strength. (Tr. 370). Plaintiff points out, however, that Dr. Bleiberg also noted that plaintiff appeared to be in pain, and also reported straightening of cervical and lumbar lordosis; tenderness to bilateral paraspinal palpation; restricted range of motion in the lumbar and cervical spine; hypertonic muscle groups; involuntary muscle spasms in both the paravertebral muscles bilaterally and the trapezius muscles; and positive Patrick's sign bilaterally for low back pain. (Tr.370). Plaintiff argues that Dr. Bleiberg's findings support rather than contradict Dr. Viguilla's restrictions.

The ALJ then cites a lack of treatment for plaintiff's psychological conditions, but notably, plaintiff contends that neither she nor Dr. Viguilla is alleging a disabling psychological condition. (Tr. 28). In according Dr. Viguilla's opinion little weight, plaintiff maintains that the ALJ has failed to cite any medical evidence of record contradicting the treating physician's opinions. In discounting Dr. Viguilla's restrictions, the ALJ holds, "although Dr. Viguilla is the claimant's treating physician, his opinion is unsupported by the objective medical evidence." (Tr. 27, 28). The ALJ, however, does not cite any specific testing that contravenes Dr. Viguilla's findings. The ALJ did note that the electromyographic study of the lower extremities revealed no evidence of lumbar radiculopathy. (Tr. 25). Plaintiff points out, however, that EMG testing, was consistent with bilateral peroneal sensory neuropathy (Tr. 291) (peroneal nerve is a branch of the sciatic nerve that supplies sensation to the lower leg, foot and toes. *See* National Library of Medicine Encyclopedia [Medlineplus.gov/] 2017).

According to plaintiff, the other objective testing also supports the opinions of the treating physician and her own testimony. Dr. Yacisen, an orthopedic surgeon, ordered x-rays of the thoracic spine and concluded that they revealed significant degenerative disc disease and increased kyphosis. (Tr. 381). Dr. Amy Hance noted that cervical x-rays revealed reversal of the lordotic curve with posterior bone spurs at C4-5, C5-6 and C6-7 with moderately decreased disc

spaces at C3-4, C4-5 and C5-6.  (Tr. 302).  NP Patricia McGuire opined that

lumbar MRI studies revealed significant degenerative disc disease at L2-3 and L4-

5.  (Tr.425).  Thus, plaintiff maintains that the opinions of Dr. Viguilla are fully

supported by the objective testing.

The ALJ also opined that plaintiff "walked at a normal speed with a non-

antalgic gait."  (Tr. 27).  This holding is not consistent with all of the medical

evidence of record.  Plaintiff points out that on several occasions, her gait was

described as impaired or stiff and painful, (Tr.391, 396, 404), while on several

other occasions, plaintiff was described as having a slow gait (Tr.317, 321, 328).

Further, in accessing plaintiff's medical history, even the ALJ has acknowledged

that plaintiff has undergone significant treatment including opioid medication,

epidural steroid injections, physical therapy, nerve blocks, chiropractic

manipulation and a lumbar radiofrequency procedure to burn the nerve roots (Tr.

219, 341-343) in attempts to reduce her pain.

Lastly, the ALJ suggests that the aforesaid treatment has provided significant

improvement in her condition.  (Tr. 27).  According to plaintiff, the improvement

that she obtained with treatment has only been temporary.  On September 30,

2014, plaintiff underwent an epidural steroid injection with her physician noting

the prior injection had provided 50% relief but only for one week.  (Tr. 359).  On

February 9, 2015, plaintiff underwent an additional pain injection with her

physician opining the prior injection provided 80% pain relief but only for 1 week

(Tr. 341).  On September 22, 2015, due to ongoing symptoms in her neck, plaintiff

was provided with additional cervical pain injections with her pain management

specialist noting the prior injection had provided 70% relief but only for two weeks

(Tr. 310).  On August 25, 2015, Dr. Ruiz noted a recent lumbar radio frequency

procedure had provided significant pain relief but that the relief had only lasted for

one month before the pain returned.  (Tr. 313).  On May 19, 2015, her physician

noted that while pain medications were helping, they were only taking away

approximately 25% of plaintiff's pain.  (Tr. 327).  As noted by the ALJ, plaintiff

has been taking significant pain medication including Vicodin, Norco, Naprosyn,

Cymbalta, Meloxicam (Mobic), Lyrica and Methocarbamol.  (Tr.26).  Yet, on

multiple occasions, plaintiff's physicians have noted that those medications were

not successful in providing control of plaintiff's severe pain.  (Tr. 281, 412-3, 406,

324, 425).  Accordingly, plaintiff contends that the ALJ has failed to set forth any

reason supported by the medical record for failing to give controlling weight to the

medical opinions and restrictions of the treating physician.

      Plaintiff also argues that the ALJ's decision that plaintiff could perform her

past work as a short order cook is inconsistent with the vocational evidence.  The

ALJ holds plaintiff is capable of performing past relevant work as a short order

cook holding this does not require the performance of work -related activities

precluded by the ALJ's residual functional capacity.  (Tr.28).  Yet, the vocational

record reflects plaintiff's past work as a cook required standing/walking at least 7-

1/2 hours of an 8 hour workday.  (Tr. l78).  In his holding, the ALJ finds that

plaintiff would only be able to stand/walk for 6 hours of an 8 hour work day (Tr.

24).  By definition, this restriction would preclude the past work as a short order

cook.  While the ALJ finds plaintiff could perform the cook position while sitting

or standing, plaintiff contends that there is no vocational testimony to support that

position.  (Tr. 29).

Additionally, Dr. Viguilla opined that as a result of her medical conditions,

plaintiff would likely miss or be absent 15 days of a 30 day period.  (Tr. 387).  The

vocational expert testified that missing more than one day per month would

preclude all employment.  (Tr. 55).  Dr. Viguilla opined that the severity of

plaintiff's pain would prevent her from sustaining even sedentary level work

without the ability to take multiple unscheduled rest breaks during the day.  (Tr.

387).  The vocational expert testified that this time off task would preclude all

employment.  (Tr. 54).  Without a valid rationale, plaintiff contends that the ALJ

disregarded the restrictions of the treating physician and opined that plaintiff would

not need any unscheduled rest breaks or be absent due to her medical impairments.

(Tr. 24).  Because the ALJ's decision is inconsistent with the uncontested medical

and vocational evidence, plaintiff argues that the ALJ's findings are legally in error requiring reversal.

>   C.    The Commissioner's Motion for Summary Judgment

Although Dr. Viguilla was Plaintiff's treating physician, the Commissioner contends that the ALJ properly gave his opinion little weight because it was not supported by the objective medical evidence, including: (1) no evidence of limitations with standing and walking; (2) no significant evidence of lack of strength; and (3) no evidence of lack of focus.  (Tr. 27-28).  With respect to standing and walking, the ALJ wrote, "The record provides no evidence that the [Plaintiff] was unable to stand or walk."  (Tr. 28).  Plaintiff alleges that this justification is erroneous because she never alleged that she was unable to walk or stand, but instead reported that her back pain worsened with those activities. Although inartfully stated, the Commissioner contends that it is clear that the ALJ did not mean to imply that plaintiff needed to demonstrate a complete inability to stand or walk in order for Dr. Viguilla's opinion that she could stand for less than two hours to be given less weight.  (Tr. 28, 376).  Rather, the ALJ reasoned that Dr. Viguilla's extreme standing and walking limitations were not supported by the evidence, which showed no limitations in these areas.  (Tr. 28).  According to the Commissioner, substantial evidence supports the ALJ's finding because Dr. Viguilla's November 2013 opinion referenced no objective findings to demonstrate

limited standing or walking ability.  (Tr. 376).  Dr. Viguilla reported a diminished range of motion in plaintiff's neck and shoulder, along with pain, but included no other objective findings in the opinion.  *Id.*  In contrast, Dr. Viguilla's June 2014 opinion discussed a functional capacity evaluation that concluded plaintiff was capable of performing light-exertion work—i.e., standing and walking for up to six hours in an eight-hour workday.  (Tr. 386).  Dr. Viguilla characterized the finding as being "just one step above sedentary" but opined, contrary to the evaluation and without reference to objective support, that plaintiff could not work at all.  *Id.* Later that month, Dr. Viguilla opined that plaintiff could not sustain sedentary work without the need to take several unscheduled breaks.  (Tr. 387).  According to the Commissioner, Dr. Viguilla failed to provide any objective basis for his opinion that plaintiff could walk for less than two hours.  The Commissioner also points out that other evidence shows that plaintiff's condition actually improved with activity.  For example, the medical providers at Michigan Spine and Pain noted that "activity" improved plaintiff's activity, allowing her to stand longer. (Tr. 320, 324, 327).  Dr. Viguilla also indicated that plaintiff's condition could improve with physical and occupational therapy.  (Tr. 384).  Plaintiff reported that physical therapy was helping and asked to continue.  (Tr. 341).  The Commissioner maintains that the records do not demonstrate that plaintiff required standing limitations in excess of those provided by the ALJ.

11

The Commissioner argues that the ALJ also gave less weight to Dr. Viguilla's opinion that plaintiff could lift less than ten pounds because the evidence failed to support that limitation.  (Tr. 28, 386).  For example, on December 26, 2013, Mary Ann Frick, F.N.P., observed normal strength.  (Tr. 269). After examining plaintiff on August 20, 2014, Marvin Bleiberg, M.D., opined that she could lift between ten and twenty five pounds.  (Tr. 368).  The physician also reported that plaintiff's strength measured four or five out of five in her shoulders, elbows, wrists, hand grip, hips, knees, and ankles.  (Tr. 370).  Additionally, plaintiff testified that she could comfortably lift a fifteen pound bag of potatoes. (Tr. 44).

To the extent that Dr. Viguilla's opinions are based on plaintiff's own subjective complaints, which the ALJ found less than credible, the Commissioner maintains that those opinions were properly given little weight.  An ALJ is not required to accept an opinion as controlling when it is based solely on a claimant's self-reports and the ALJ does not find the claimant credible.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007).  The ALJ properly found that plaintiff's allegations were not fully credible based on conservative treatment, the imaging studies were generally unremarkable or showed only minimal defects, plaintiff's activities of daily living showed that she was not as limited as alleged.

The Commissioner also asserts that the ALJ properly relied on the vocational expert's testimony that plaintiff could perform her past relevant work. Plaintiff completed a work history report stating she walked for eight hours, stood for eight hours, and sat for a half hour each day at her job as a cook. (Tr. 178). Additionally, plaintiff noted "It's hard to say how many hours I do each thing[;] I[']m the only cook on my shift." *Id*. The vocational expert reviewed the evidence and submitted a worksheet showing that plaintiff's past relevant work as a cashier and a short-order cook—both as actually performed by her and in the national economy—were performed at the light exertional level. (Tr. 52, 215). The ALJ then posed a hypothetical question describing an individual who could stand or walk for six hours in an eight-hour day. (Tr. 53). In response, the vocational expert testified that such an individual would be able to perform plaintiff's past work as a short-order cook, both as she actually performed it and as it was performed in the national economy. (Tr. 28-29, 53). The expert confirmed that his testimony was consistent with the Dictionary of Occupational Titles. (Tr. 53). At a minimum, the vocational expert testified that plaintiff could return to her former type of work, and his testimony is consistent with the Dictionary of Occupational Titles. *See e.g.*, DICOT 313.374-014, 1991 WL 672717 (G.P.O.) (Cook, Short Order (Hotels and Restaurants) (light exertion work)).

D.    Plaintiff's Reply Brief

In reply, plaintiff maintains that the objective medical record contradicts defendants' allegation that Dr. Viguilla's restrictions are not supported by the record.  Plaintiff cites the following evidence in support:

- On May 20, 2014, Plaintiff was evaluated by board certified orthopedic surgeon, Joseph Yacisen, D.O. who performed x-rays of the thoracic spine which revealed significant degenerative disc disease with increased kyphosis (Tr. 381).

- Dr. Amy Hance of Michigan Spine and Pain Center performed cervical spine x-rays which revealed reversal of the lordotic curve with posterior bone spurs at C4-5, C5-6 and C6-7 with moderate decreased disc spacing at C3-4, C4-5 and C5-6 (Tr. 302).

- EMG testing of the lower extremities revealed bilateral peroneal sensory neuropathy (Tr. 291) (peroneal nerve is a branch of the sciatic nerve that supplies sensation to the lower leg, foot and toes.  National Library of Medicine Encyclopedia [medlineplus.gov/ency 2017].

- Dr. Viguilla reported that an MRI of the lumbar spine revealed degenerative disc disease at L2-3 and L4-5 (Tr. 390).

- Flexion and extension x-rays of the cervical spine in March, 2015 revealed
  moderate narrowing at C5-6 and mild narrowing at C4-5 with anterolisthesis
  Grade I of C4 on C5 (Tr. 293).

Plaintiff maintains that Dr. Viguilla's opinion and restrictions are fully supported

by the objective testing results that were ordered by the treating physician and/or

the pain management specialists that Dr. Viguilla referred plaintiff to and relief on

in treating his patient.  To the extent that the ALJ (Tr. 25) or the Commissioner is

alleging that the objective test findings are not severe enough to support Dr.

Viguilla's restrictions, plaintiff contends that there is zero medical support for that

finding given that no physician of record has expressed a residual capacity

assessment that is contrary to the finding of the treating physician, Dr. Viguilla.

Nor is there any medical opinion or residual capacity assessment that is consistent

with the findings of the ALJ.  According to plaintiff, the ALJ's RFC assessment

must be supported by substantial medical evidence of record and not merely the

ALJ's own medical interpretation of the raw medical data.  *Gross v. Comm'r of*

*Soc. Sec.*, 2017 WL 1151099 (E.D. Mich. 2017); *Campanaro v. Comm'r of Soc.*

*Sec.*, 14-12876 (E.D. Mich. June 30, 2016).  As her treating physician's opinion is

not contradicted by any medical opinion of record and is supported by objective

findings, plaintiff asserts that the ALJ was legally in error in failing to give the

treating physician's restrictions controlling weight.

Plaintiff also points out that her subjective complaints of increased pain on standing are supported by objective medical evidence.  On multiple occasions, Dr. Viguilla noted increased pain with standing also in his physical examination findings.  (Tr. 317, 321, 339).  Dr. Viguilla's office exam findings are consistent with each of the other physicians of record.  Orthopedic surgeon Joseph Yacisen, D.O. noted decreased range of motion in the lumbar spine, active muscle spasms in the shoulders, increased thoracic kyphosis and left iliac tilt.  (Tr. 381).  Pain management specialist, Marvin Bleiberg, M.D. reported 50-75% loss of motion in the lumbar and cervical spine, involuntary muscle spasms present in the paravertebral muscles, hypertonic muscle tone, decreased bilateral shoulder strength and positive Patrick's sign bilaterally for low back pain.  (Tr. 370).  Dr. Amy Hance from Michigan Spine and Pain Center noted significant increase in pain with palpation of the L4-L5 spinal tissues and a moderate amount of decreased tonicity on palpation (normal firmness or contraction of resting muscles) American Heritage Medical Dictionary.  Again, contrary to the suggestion of the Commissioner, the other physicians' objective findings as well as the subjective findings fully support Dr. Viguilla's restrictions which should have been afforded controlling weight.

While the Commissioner cites one date where plaintiff's ability to be active improved with increased activity by plaintiff, the Commissioner fails to note on the

16

next appointment of August 18, 2015, NP Nolan reported activity was not improving plaintiff's ability to be active and plaintiff was requesting additional pain injections in her neck due to increased pain. (Tr. 317). The Commissioner misstates the doctor's report in suggesting that plaintiff stated she could lift up to 25 pounds. (Dkt. l5, p. 10). As noted by the Commissioner in the following sentence, plaintiff testified the most she was able to lift would be 15 pounds. (Tr. 44). When filling out a form for her pain specialist, Dr. Bleiberg, Ms. Hagan was required to check one of three boxes regarding her ability to lift: less than 10 pounds, 10-25 pounds, or 25-50 pounds. (Tr. 299). According to plaintiff, she was merely checking the most accurate box available to her, she was not averring that she could lift beyond her prior testimony and beyond her doctor's restriction.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

19

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. Title XVI benefits are available to poverty stricken adults and children who become disabled. While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). F. Bloch, Federal Disability Law and Practice § 1.1 (1984).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

Though no specific Step 3 error was raised by plaintiff, she does observe that the ALJ's conclusions on her limitations are not supported by a medical opinion, given that the ALJ rejected the treating physician opinion.  Though plaintiff's focus was on limitations found by the treating physician, in the view of the undersigned, a precedent consequential issue is the ALJ's error in the sequential analysis at Step 3 on the issue of medical equivalence.  The Court may raise such an obvious and significant legal error *sua sponte*.  *See e.g.*, *Trainor v. Comm'r of Soc. Sec.*, 2014 WL 988993, at *23-24 (E.D. Mich. Mar. 13, 2014) (Berg, J.) (citing *Fowler v. Comm'r v. Comm'r of Soc. Sec.*, 2013 WL 537883, at

*3 n. 5 (E.D. Mich. Sept. 25, 2013) (finding no error in magistrate judge *sua sponte* raising the absence of an expert opinion on equivalence).[3]

Without question, the ALJ expressly determined that plaintiff's conditions did not meet Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), and 11.00 (Neurological Impairments) and such determinations were well within the ALJ's purview.  (Tr. 23-24).  However, the ALJ then went on to conclude that plaintiff's physical impairments did not medically equal any Listing, without the benefit of any medical opinion and without any indication that plaintiff's impairments were assessed in combination.  The ALJ's analysis in this regard states as follows:

> The claimant's condition does not meet or equal listing 1.02.  That listing requires that the claimant have a gross anatomical deformity and chronic joint pain with involvement of a peripheral weight-bearing joint resulting in an inability to ambulate effectively or involving a major peripheral joint in each upper extremity resulting in an inability to perform fine and

---

[3]  As explained in *Fowler v. Comm'r of Soc. Sec.*, 2013 WL 5372883, at *3 (E.D. Mich. Sept. 25, 2013), the Sixth Circuit has also previously considered the issue of whether certain impairments meet or equal a listing, even though that issue had not been specifically objected to, and this practice is not uncommon in this District and throughout the Circuit.  *See Gwin v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 102 (6th Cir. 2004); *see also Buhl v. Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. 2013) (plaintiff's failure to raise argument did not prevent the Court from identifying error based on its own review of the record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013) (Friedman, J.); *Bucha v. Comm'r of Soc. Sec.*, 2016 WL 5340271*3 n. 3 (W.D. Mich. 2016) ("While the failure to raise an argument often constitutes waiver, the Court will not overlook the ALJ's application of the wrong standard in this case as a matter of law."); *Mian v. Colvin*, 2015 WL 2248750, *14 (E.D. Tenn. 2015) ("[T]he Court may address an issue sua sponte should it find error upon review.").

gross movements effectively.  In January 2014 and March 2014, the claimant's shoulders showed no sign of impingement and exhibited full range of motion.  X-ray study results of the claimant's right hip were unremarkable (2F/34; 4F/l; 5F/6).  Therefore, the claimant's condition does not meet or equal listing 1.02.

The claimant's condition does not meet or equal listing 1.04.  Testing results from October 2014 through July 2015 revealed mild narrowing at C4-C5 and mild instances of spinal central stenosis and neural foraminal encroachment, but no significant additional abnormalities (5F/l ).  The claimant's impairment does not reach the severity required by 1.04 in that there is no evidence of a nerve root compression characterized by pain, limitation of motion of the spine, motor loss, sensory or reflex loss, and positive straight leg-raise testing.  Neither does the Claimant's condition include other elements required such as spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.  Therefore, the claimant's condition does not meet or equal listing 1.04.

The claimant's headaches do not meet or equal listing 11.00.  The medical record fails to establish evidence of any neurological deficits (6F).  Specifically, the record tails to demonstrate evidence of epilepsy or epileptic seizures (11.02 and 11.03), a central nervous system vascular accident (11.04), a benign brain tumor (11.05), Parkinsonian syndrome (11.06), cerebral palsy (11.07), spinal cord or nerve root lesions (1 1.08), multiple sclerosis (1 1.09), amyotrophic lateral sclerosis (11.10), anterior poliomyelitis (11.11), myasthenia gravis (11.12), muscular dystrophy (11.13), peripheral neuropathies (11.14), subacute combined cord degeneration (11.15), a degenerative disease not listed elsewhere with disorganization of motor functions as described in 11.04B (11.17/1.), chronic brain syndrome (11.17B), cerebral trauma (11.18), or syringomyelia (11.19).  Accordingly, I find that the claimant's headaches fail to meet or medically equal this listing.

(Tr. 23-24).

The Commissioner is required to have a medical opinion to support the equivalence analysis.  Indeed, the applicable regulation expressly provides that an opinion by a medical consultant will be considered in making such an assessment:

> … When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 404.1560(c)(1)).  *We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner.*  (See § 404.1616.)

20 C.F.R. § 404.1526(c) (emphasis added).  As explained in *Trainor*, Social Security Ruling 96-6p[1] and many decisions from this judicial district, require a medical expert's opinion on the issue of equivalence:

> [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

---

[1]  Social Security Rulings do not have the force of law, but they are binding on all components of the Agency, as provided by 20 C.F.R. 402.35(b)(1).  *Carter v. Colvin*, 220 F. Supp. 3d 789, 795 (E.D. Ky. 2016); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9 (1990) ("Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'").

*Id.* at *24 (quoting SSR 96-6p, 1996 WL 374180, at *3 (1996) and citing *Fowler*,

2013 WL 5372883, at *4 (collecting cases and remanding because there was no

expert medical opinion on the issue of equivalence)); *Manson v. Comm'r of Soc.*

*Sec.*, 2013 WL 3456960, at *11 (E.D. Mich. July 9, 2013) (Cohn, J.) (remanding

for an expert opinion at step three).  Although the Sixth Circuit has not directly

addressed the issue, it has reasoned that, "[g]enerally, the opinion of a medical

expert is required before a determination of medical equivalence is made."  *Retka*

*v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995); *see also*, *Brown v. Comm'r*

*of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The

lack of an expert opinion on whether the claimant's physical impairments (alone or

combined with her mental impairments) medically equal any listed impairment is

clear error and requires remand where the record is not so lacking in medical

findings that a finding of equivalence is implausible.); *Maynard v. Comm'r*, 2012

WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is

applicable, and requires a medical opinion on the issue of equivalence.") (Cohn,

J.); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical

opinion on the issue of equivalence is required, regardless of whether the SDM

model is implicated) (Ludington, J.).

Social Security Ruling 96-6p provides guidance as to the type of documents

that may constitute a medical expert's opinion on the issue of equivalence: the

signature of a State agency medical or psychological consultant on an SSA-831-U5

(Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5

(Cessation or Continuance of Disability or Blindness) ensures that consideration by

a physician (or psychologist) designated by the Commissioner has been given to

the question of medical equivalence at the initial and reconsideration levels of

administrative review.  Other documents, on which medical and psychological

consultants may record their findings, may also ensure that an opinion has been

obtained at the first two levels of administrative review.  *Trainor*, at *24 (citing

SSR 96-6p, 1996 WL 374180, at *3 (1996)).

        In this case, there are no documents in the record reflecting that a qualified

medical advisor assessed medical equivalence at any stage of review.  The

Disability Determination and Transmittal form was not signed by a physician.  (Tr.

69).  The Disability Determination Explanation form only contains an assessment

of plaintiff's physical impairments by a single decision-maker, not any medical

advisor.  (Tr. 58-68).  Thus, there is no medical opinion in this record on the issue

of equivalence, as required by SSR 96-6p.

        Compounding the ALJ's failure to obtain a medical advisor opinion on

equivalence as to plaintiff's severe physical impairments, is the fact that the ALJ's

resulting approach misses the requirement to assess severe impairments in

<u>combination</u> - a critical component of the equivalence analysis.  Here, there is no

28

discussion in the ALJ's equivalency analysis suggesting that the ALJ considered plaintiff's numerous conditions in combination for purposes of the equivalency analysis, as required by 20 C.F.R. § 416.920(c).  If a claimant has more than one impairment, none of which meet a listing singularly, the Commissioner must determine whether the combination of impairments is medically equivalent to a listed impairment.  20 C.F.R. § 404.1526(b)(3).

In this case, the ALJ found that plaintiff has seven discrete severe impairments, but the only mention of her "combination of impairments" appears in the heading preceding the discussion of whether she meets any Listing.  (Tr. 23). Thus, not only is there no medical opinion addressing the issue of equivalency, but there is also nothing in the ALJ's analysis, beyond the conclusion-stating heading introducing the actual discussion, suggesting that the ALJ considered plaintiff's impairments in combination.  Importantly, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [Plaintiff's] impairments ... in combination equal one of the Commissioner's listings." *Sheeks v. Comm'r of Soc. Sec.*, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23, 2015) (Duggan, J.) (citation omitted); s*ee also Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, *4 (E.D. Mich. 2014) (Duggan, J.) (The ALJ failed to consider the severity of plaintiff's impairments in combination, as prescribed by 20 C.F.R. § 416.920(c)); 42 U.S.C. § 423(d)(2)(B) ("In determining whether an ... impairment or

impairments are of a sufficient medical severity such that [a finding of disability would be warranted], the Commissioner ... shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.").  Consequently, the failure to obtain a medical opinion on equivalence is error.

The Court recognizes that the failure to obtain a medical opinion on equivalence can amount to harmless error in some circumstances.  However, the instant circumstances do not appear to qualify.  *See e.g.*, *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at \*6 (E.D. Mich. Sept. 26, 2014).  As explained in *Bukowski*, "'the harmless error inquiry turns on whether the ALJ would have reached the same conclusions,' at Step Three had there been a medical opinion on the combination of Bukowski's psychiatric and physical impairments."  *Bukowski*, 2014 WL 4823861, at \*5.  In *Bukowski*, the failure to obtain an opinion on equivalence was deemed harmless "given Plaintiff's failure to adduce evidence that the physical impairments had any effect on her psychiatric impairments and her admission that her psychiatric impairments were the basis for her disability."  *Id.* at \*6.

Here, unlike the facts in *Bukowski*, plaintiff has not made any such claim.  In fact, plaintiff's physical impairments in this case are her primary reasons for seeking disability.  Furthermore, plaintiff's medical records contain a not

insubstantial number of objective medical findings concerning her impairments. Those findings include, amongst other things:  (1) on May 20, 2014, orthopedic surgeon, Joseph Yacisen, D.O. performed x-rays of the thoracic spine which revealed significant degenerative disc disease with increased kyphosis (Tr. 381); (2)  Dr. Amy Hance of Michigan Spine and Pain Center performed cervical spine x-rays which revealed reversal of the lordotic curve with posterior bone spurs at C4-5, C5-6 and C6-7 with moderate decreased disc spacing at C3-4, C4-5 and C5-6 (Tr. 302); (3) EMG testing of the lower extremities revealed bilateral peroneal sensory neuropathy (Tr. 291); (4) Dr. Viguilla reported that an MRI of the lumbar spine revealed degenerative disc disease at L2-3 and L4-5 (Tr. 390); and (5) Flexion and extension x-rays of the cervical spine in March, 2015 showed moderate narrowing at C5-6 and mild narrowing at C4-5 with anterolisthesis Grade I of C4 on C5 (Tr. 293).  Notwithstanding the ALJ's analysis on meeting the listings, considering the evidenced identified above, it cannot be said that the record is so lacking in medical findings that a finding of equivalence is implausible.  Indeed, though certainly possible, it is not evident that a trained medical advisor, viewing the record as a whole, along a continuum, and considering all of plaintiff's impairments in combination, would have reached the same conclusion on equivalence.  The caution in *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) that "courts generally should exercise caution

in conducting harmless error review" of a step three finding because harmlessness

"may be difficult, or even impossible, to assess," is apt here.  Neither the ALJ nor

this Court possesses the medical expertise to interpret the significant medical

evidence in the record to determine if plaintiff's impairments, in combination,

equal any of the applicable listings.  *See also Allor v. Colvin*, 2016 WL 7650798, at

*6 (E.D. Mich. Nov. 28, 2016) (Stafford, M.J.), report and recommendation

adopted 2017 WL 2350061 (E.D. Mich. May 31, 2017) (Cox, J.).  The objective

medical findings in this case simply do not lend themselves to neat lay

interpretation by the Court; and, in view of the more than minimal number of

medical findings, the Court does not deem it a prudent exercise to analyze

equivalence in the first instance.  *See Freeman v. Astrue*, 2012 WL 384838 at *5

(E.D. Wash. Feb 6, 2012) ("Neither the ALJ nor this court possesses the requisite

medical expertise to determine if Plaintiff's impairments (including pain) in

combination equal one of the Commissioner's Listing."); *Brown v. Comm'r of Soc.

Sec.*, 2014 WL 222760, at *15 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (Plaintiff's

appreciable medical findings supporting her impairments, while insufficient to

meet a listing, presented sufficient evidence to suggest that a finding of medical

equivalence was at least plausible, thereby necessitating a medical opinion on the

issue).

In fashioning the RFC without the assistance of a medical opinion on equivalence, the ALJ carved out several limiting functions based on the ALJ's own interpretation of the medical records.  However, Dr. Viguilla's RFC assessment imposed more severe limitations on plaintiff's functional abilities.  The ALJ assigned little weight to Viguilla's opinions in this regard.  But, it is not clear that Dr. Viguilla's opinions would have been so severely discounted by a medical expert opining on equivalency who was tasked with evaluating all of plaintiff's physical impairments in combination.  *See Brown,* 2014 WL 222760 at *14.

For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's impairments in combination.  In light of the foregoing conclusions, a reassessment of plaintiff's credibility, the treating physician opinion, and the RFC in light of the new opinion will be necessary and plaintiff's other points of error need not be addressed further.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

34

Date: February 23, 2018                s/Stephanie Dawkins Davis
                                       Stephanie Dawkins Davis
                                       United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 23, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                       s/Tammy Hallwood
                                       Case Manager
                                       (810) 341-7887
                                       tammy_hallwood@mied.uscourts.gov